## COLLINS v. MORGAN GRAIN CO., Inc.*

(Circuit Court of Appeals, Ninth Circuit. November 15, 1926.)

No. 4933.

**1. Corporations ⬉⟿83—Subscriber to stock of proposed corporation has right to withdraw his subscription at any time before organization.**

A subscription to the stock of a proposed business corporation does not become a contract until the corporation has been organized and the subscription accepted,- and until that time the subscriber has the right to withdraw his offer.

**2. Corporations ⬉⟿76—Validity of stock subscription is governed by law of state of organization.**

Validity of stock subscription is governed by law of state in which corporation is organized.

**3. Contracts ⬉⟿28(2)—Revocation or withdrawal of offer may be shown by parol.**

It is competent to prove by parol the revocation or withdrawal of an offer, whether the offer is written or oral.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action at law by the Morgan Grain Company, Inc., against H. W. Collins. Judgment for plaintiff, and defendant brings error. Reversed, and cause remanded for a new trial.

James H. Raley, of Pendleton, Or., Richard W. Montague, of Portland, Or., and William I. Brobeck, Herman Phleger, and Maurice E. Harrison, all of San Francisco, Cal., for plaintiff in error.

William S. Andrews, of San Francisco, Cal., and Harry L. Raffety, Merwin Rankin, and David C. Pickett, all of Portland, Or., for defendant in error.

*Rehearing denied January 31, 1927.

Before GILBERT and RUDKIN, Circuit Judges, and NETERER, District Judge.

RUDKIN, Circuit Judge. This was an action by a corporation to recover a balance due on a stock subscription. There is little controversy over the facts. In the latter part of 1920, one Morgan, a grain dealer of San Francisco, conceived the idea of forming a corporation.to take over the grain business then conducted by certain operators on the Pacific Coast. With this object in view, he consulted Collins, a grain operator in Oregon and the Pacific Northwest, and Sibley and Anderson, American managers for Wills & Sons of London, and proposed that Wills & Sons, Sibley, Anderson, Collins, and himself take stock in the proposed corporation. The proposition was looked upon with favor by Wills & Sons, and they directed their American managers to proceed to New York and meet one of their directors, to discuss the matter with Morgan. A conference was held in New York, attended by Morgan, Sibley, Anderson, and a director of Wills & Sons, and as a result of this conference Morgan wired Collins concerning the .matter. The telegram is not in the record, but in response thereto Collins wired Morgan, agreeing to take $25,000 in stock in the proposed corporation, payable in installments.

Upon receipt of this message, Wills & Sons agreed to subscribe for 1,260 shares, Anderson and Sibley for 10 shares each, and Morgan for 625 shares, of the par value of $100 each. Sibley and Morgan then returned to San Francisco, and while at Chicago, on their return, two additional subscriptions were taken, one for 50 shares, the other for 25 shares. After the return of the parties to San Francisco, the Morgan Grain Company was organized under the laws of the state of Delaware, and Morgan became president of the company. Morgan reported to the board of directors that he had secured subscriptions to the capital stock as above detailed. The subscriptions were accepted by the board and a call of 25 per cent. was made. The call was paid, and certificates issued to the several stockholders for the number of shares paid in full. Thereafter a certificate for the remaining shares subscribed by Collins was tendered, but he refused to accept the certificate or to pay the additional subscription. This action followed.

Upon the trial in the court below the defendant offered to prove that, before the organization of the corporation or the acceptance of his offer to subscribe, he met Morgan

and Sibley in San Francisco and informed Morgan that he withdrew his subscription, that if Morgan would consent to its cancellation he would subscribe for and take $5,000 of stock in the corporation, and that Morgan agreed to this. The court below ruled that this evidence was incompetent, and directed a verdict for the plaintiff. The judgment on the verdict is now before us for review.

[1] The principal assignment of error is based on the ruling of the court excluding testimony tending to prove a revocation or cancellation of the subscription before the corporation was formed, and before the offer was accepted. Agreements to subscribe for stock of corporations to be formed in the future may assume different forms, with different results. For example, if an individual, acting singly and without co-operation with others, offers to take stock in such a corporation, all the authorities agree that the offer may be rescinded or revoked at any time before the corporation is formed and the offer accepted; this upon the familiar principle that it takes two parties to make a contract, and that, if one is not bound, the other is not, in other words, that a mere unaccepted offer cannot in the nature of things constitute a binding contract.

Again, such an agreement may assume a double aspect, as where a number of persons agree to form a corporation and to subscribe to its capital stock. Such an agreement constitutes a contract as between the subscribers themselves, operative at once, and it likewise constitutes a continuing offer to the proposed corporation, which, upon acceptance, becomes as to each subscriber a contract between him and the corporation. Some of the authorities hold that contracts of the latter class are irrevocable without the consent of all the parties thereto; but there is usually found in such cases some element of estoppel, which does not exist in the case at bar. But, without attempting to distinguish the present case from the cases so holding, we deem it sufficient to say that the cases relied on are not supported by the weight of authority.

"According to the weight of authority, a subscription may be withdrawn at any time before it is accepted by the corporation, whether made before or after the formation of the corporation, for the reason that until such acceptance there is no binding contract, because, until then, there is no agreement and no mutuality of object, and hence no consideration, and, in the case of subscriptions made before the corporation is formed, for the additional reason that, until it is formed, the other contemplated party to the contract is not yet in existence; nor, where this rule obtains, is a subscriber deprived of the right to withdraw under such circumstances because other subscribers have acted upon the strength of his subscription, nor because he has induced others to subscribe." 2 Fletcher, Cyc. Corp. 1225. See, also, 4 Clark & Marshall on Priv. Corp. § 475; Purdy's Beach on Priv. Corp. § 205; 1 Cook on Corp. § 75; 1 Machen on Corp. § 249; 14 C. J. 524.

The reason for the majority rule is well stated in Hudson Real Estate Co. v. Tower, 156 Mass. 82, 30 N. E. 465, 32 Am. St. Rep. 434:

"At the time when the defendant signed the subscription paper declared on, it was not a contract, for want of a contracting party on the other side; but it has now been established that a subscription of this sort becomes a contract with the corporation when the corporation has been organized, and in this way the objection of the want of a proper contracting party is finally avoided, provided everything goes on as contemplated without any interruption. Until the organization of the corporation, the subscription is a mere proposition or offer, which may be withdrawn, like any other unaccepted offer. Unless the signer is bound upon a contract, he is not bound at all. It is open to him to withdraw. It is not on the ground that there was no sufficient consideration. The seal would do away with any doubt on that score. But it is on the ground that for the time being, and until the corporation is organized, the writing does not take effect as a contract, because the contemplated party to the contract, on the other side, is not yet in existence, and for this reason, there being no contract, the whole undertaking is inchoate and incomplete, and since there is no contract the party may withdraw."

Again, in Bryant's Pond Steam-Mill Co. v. Felt, 87 Me. 234, 32 A. 888, 33 L. R. A. 593, 47 Am. St. Rep. 323, the court said:

"The right of subscribers to the capital stock of a proposed corporation to withdraw their subscriptions at any time before the organization of the corporation is completed has been affirmed in several recent and well-considered opinions. The right rests upon the impregnable ground of the legal impossibility of completing a contract between two parties, only one of which is in existence. There can be no meeting of the minds of the parties. There can be no acceptance of the subscriber's proposition to become a stockholder. There can be no mutuality of rights or obligations. There can be no considera-

tion for the subscriber's promise. As said in one of our own decisions, it is a mere nudum pactum,—a promisor without a promisee; a contractor without a contractee. In fact, every element of a binding contract is wanting. If the subscriber's promise to take and pay for shares remains unrevoked till the organization of the proposed corporation is effected and his promise has been accepted, then we have all the elements of a valid contract: Competent parties; mutuality of duties and obligations; a valid consideration, the promise of one party being a sufficient consideration for the promise of the other; a promisee as well as a promisor; a contractee as well as a contractor. In fact, all the elements of a valid contract are present, and the subscription has become binding upon both of the parties. But, till the corporation has come into existence, all these elements are necessarily wanting; and the subscriber's promise amounts to no more than an offer, which, like all mere offers, may be withdrawn at any time before acceptance. When accepted, it becomes binding. Till accepted, it remains revocable. This conclusion is sustained by reason and authority."

And, in reference to the minority rule, the court added:

"It is urged by the counsel for the plaintiff corporation that such subscriptions create binding and enforceable contracts between the subscribers themselves, and are therefore irrevocable, except with the consent of all the subscribers, and some of the authorities cited by him seem to sustain that view. But we find on examination that such views, when expressed, are in most cases mere dicta, and that the cases are very few in which such a doctrine has been acted upon. Reason and the weight of authority are opposed to such a view. Of course, subscription papers may be so worded as to create binding contracts between the subscribers themselves. But we are not now speaking of such subscription, or of voluntary and gratuitous subscriptions to public or charitable objects, which, when accepted and acted upon, become binding. We are now speaking only of subscriptions to the capital stock of proposed business corporations. With regard to such subscriptions, we regard it as settled law that they do not become binding upon the subscribers till the corporations have been organized, and the subscriptions accepted, and that till then the subscribers have a right to revoke their subscriptions. And in view of the fact that such subscriptions are often obtained by over persuasion, and upon sudden and hasty impulses, we are not prepared to say that the rule of law which allows such a revocation is not founded in wisdom. We think it is."

We give adherence to the majority rule, not only because it is best supported by authority, but because it is supported by the sounder reasoning as well. It is contended by the defendant in error that the ruling of the court below rejecting the testimony was not excepted to, or that the exception was insufficient, but with that contention we are unable to agree. The court below treated the exception as sufficient and gave full consideration to the case on the merits, on the hearing of the motion for a new trial, and this court will follow the same course.

[2] The telegram on which the case of the defendant in error rests was delivered in New York, the alleged revocation of the offer by the plaintiff in error took place in California, the defendant in error was incorporated under the laws of the state of Delaware, and, by reason of this, there is some discussion in the briefs as to what law is controlling. We do not think that our conclusion conflicts in any way with the laws or rules of decision in any of these states, but, as an abstract proposition, we think the case is clearly controlled by the laws of the state of Delaware, of which the defendant in error is a creature. Nashua Savings Bank v. Anglo-American Co., 189 U. S. 221, 23 S. Ct. 517, 47 L. Ed. 782; 14 C. J. 535.

[3] There is no attempt here to change or modify the terms of a written contract by parol testimony, because there was no contract, oral or written. There was simply an offer, and it is always competent to prove by parol the revocation of an offer, whether the offer be written or oral. The fact that another offer may have been substituted in the place of the one withdrawn or revoked does not change the rule.

For the foregoing reasons, we are of opinion that the court below erred in excluding the testimony tending to show a revocation or cancellation of the subscription before the corporation was formed and before the offer was accepted, and for this error the judgment is reversed, and the cause is remanded for a new trial.