**Amy STONE and Glenn Stone,
Plaintiffs-Appellants,**

v.

**SMITH, KLINE & FRENCH LABORA-
TORIES, et al., Defendants-Appellees.**

No. 82–7232.

United States Court of Appeals,
Eleventh Circuit.

May 14, 1984.

Jack Drake, University, Ala., for plaintiffs-appellants.

Lange, Simpson, Robinson & Somerville, Lawrence B. Clark, Craig Alexander, Birmingham, Ala., for defendants-appellants.

Before TJOFLAT, HILL and JOHNSON, Circuit Judges.

**51.** *See* note 10.

PER CURIAM:

Amy and Glenn Stone appeal from the district court's grant of summary judgment in favor of Smith, Kline & French Laboratories claiming that the court misapplied the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). After oral argument, this Court concluded that this appeal presents an important issue of Alabama law which is appropriate for resolution by the Supreme Court of Alabama. Accordingly, we deferred decision pending certification, pursuant to Rule 18 of the Alabama Rules of Appellate Procedure. The following is a statement of facts and certified questions of law proposed to the Alabama Supreme Court, 447 So.2d 1301, and the response of that court to the certified questions:

THE STATE OF ALABAMA – – – –
JUDICIAL DEPARTMENT

THE SUPREME COURT OF ALABAMA

OCTOBER TERM, 1983–84

Amy Stone and Glenn Stone

v.

Smith, Kline & French Laboratories,
et al.

82–695–CER

Certified Questions From the United
States Court of Appeals
for the Eleventh Circuit

ADAMS, JUSTICE.

Pursuant to Rule 18 of the Alabama Rules of Appellate Procedure, the United States Court of Appeals for the Eleventh Circuit has certified certain questions concerning the Alabama Extended Manufacturer's Liability Doctrine for resolution by this court. The certification opinion states:

Amy and Glenn Stone appeal from the district court's grant of summary judgment in favor of Smith, Kline & French Laboratories claiming that the court misapplied the Alabama Extended Manufacturer's Liability Doctrine (AEMLD). We conclude that this appeal presents an important issue of Alabama law which we believe is appropriate for resolution by the Supreme Court of Alabama. Accordingly, our decision in this matter will be deferred pending certification pursuant to Rule 18 of the Alabama Rules of Appellate Procedure. The following is the statement of facts and certified questions of law proposed to the Alabama Supreme Court.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT TO THE SUPREME COURT OF ALABAMA PURSUANT TO RULE 18 OF THE ALABAMA RULES OF APPELLATE PROCEDURE. TO THE SUPREME COURT OF ALABAMA AND THE HONORABLE JUSTICES THEREOF:

It appears to the United States Court of Appeals for the Eleventh Circuit that the above-styled case in this Court involves questions or propositions of law of the State of Alabama which are determinative of the cause, and there appears to be no one clear, controlling precedent in the decisions of the courts of the State of Alabama. This Court certifies the following questions of law to the Supreme Court of Alabama for instructions concerning said questions of law, based on the facts recited herein.

I. STYLE OF THE CASE

The style of the case in which this certification is made is Amy Stone and Glenn Stone, Plaintiffs-Appellants, versus Smith, Kline & French Laboratories, et al., Defendants-Appellees, Case No. 82–7232, United States Court of Appeals for the Eleventh Circuit on appeal from the United States District Court for the Northern District of Alabama.

II. STATEMENT OF THE FACTS

Glenn and Amy Stone, husband and wife, live in Moundville, Alabama. In

November 1980, plaintiff Amy Stone developed an emotional problem later diagnosed as a "brief reactive psychosis." She was placed in Druid City Hospital, Tuscaloosa, Alabama, on November 7, 1980, under the care of Dr. Lewis Sharman, a psychiatrist. While at Druid City Hospital, Amy Stone received 150 mgs. of Thorazine per day. Her emotional condition improved and she was discharged on November 26, 1980. She was instructed to continue taking 50 mgs. of Thorazine two times each day.

After her discharge Amy Stone became ill and developed pruritus, dark urine, jaundice, malaise, anorexia and a 102 fever. She continued to take Thorazine. On December 5, 1980, Mrs. Stone was readmitted to Druid City Hospital and placed under the care of Dr. John Burnum, an internist. Mrs. Stone remained in Druid City Hospital until January 13, 1981, when she was admitted to the University of Alabama Hospital in Birmingham and placed under the care of Dr. Leonard Ou Tim, a specialist in gastroenterology. Dr. Ou Tim diagnosed Mrs. Stone's problem as Thorazine-induced hepatitis. By April 1981, Mrs. Stone had recovered from the hepatitis.

The district court found that Thorazine, a prescription drug, was an "unavoidably unsafe product" as described in Comment k to Section 402 A of the RESTATEMENT (SECOND) OF TORTS, and that the Alabama Extended Manufacturer's Liability Doctrine (AEMLD) is virtually identical to Section 402 A. Relying on *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1274 (5th Cir.1974) (interpreting Section 402 A under Texas Law), the court held that "an unavoidably unsafe product is neither defective nor unreasonably dangerous if such a product is 'properly prepared, and is accompanied by proper directions and warnings.'" The district court found that Alabama would not impose a duty to warn the ultimate consumer of the potential dangers of a prescription drug, concluding that, under the facts of the case, "where a warning given by a drug manufacturer adequately warns a prescribing physician of the potential danger of a prescription drug, and no contention is made that the drug could be altered or changed by the manufacturer to avoid or reduce that danger, then the drug manufacturer should not be held to strict liability when injury results from the use of the drug."

III. CERTIFIED QUESTIONS

Relying on the foregoing undisputed facts, this Court requests that the Supreme Court of Alabama address the following questions:

(1) In the case of an unavoidably unsafe and properly prepared prescription drug, does the adequacy of the accompanying warning determine whether a patient assumed the risk of taking the drug, *see Casrell v. Altec Industries, Inc.,* 335 So.2d 128, 134 (Ala.1976); *Atkins v. American Motors Corp.,* 335 So.2d 134, 143 (Ala. 1976), or does it determine whether the product is unreasonably dangerous? *See Casrell, supra,* at 133; *Atkins, supra,* at 142.

(2) If the adequacy of the warning determines whether a plaintiff assumed the risk, can prescribing physicians assume the risk for their patients?

(3) If the adequacy of the warning determines whether an unavoidably unsafe prescription drug is unreasonably dangerous, is an adequate warning to the prescribing physician, but not to the ultimate consumer, sufficient as a matter of law?

The Clerk of this Court is directed to transmit this certificate, as well as the briefs and records filed with the Court, to the Supreme Court of Alabama and simultaneously to transmit copies of the certificate to the attorneys for the respective parties.

CERTIFIED.

Plaintiffs-appellants object to both the district court's tacit finding as a matter of

law that Thorazine, an ethical drug, is an "unavoidably unsafe product" as described in Comment k to Section 402A of the Restatement (Second) of Torts (1965),[1] and the predication of the first certified question on that finding. They assert that defendant-appellee should have been required to submit the question of whether Thorazine is "unavoidably unsafe" to the jury, as is ordinarily required when the defense of assumption of risk is raised under the Alabama Extended Manufacturer's Liability Doctrine. See *Atkins v. American Motors Corp.*, 335 So.2d 134, 143 (Ala.1976).

In response, defendant-appellee insists that it never raised the defense of assumption of risk in the trial court or on appeal, and that plaintiffs-appellants presented no facts from which the district court could conclude that Thorazine was not "unavoidably unsafe." Having carefully studied the record of this case and the briefs of the parties, we agree with these assertions of Smith, Kline & French.

The district court rightly recognized the applicability of Comment k to Section 402A of the Restatement (Second) of Torts (1965), which we have said "retains its utility" under our modification of the Restatement's theory of strict liability, *Atkins v. American Motors Corp.*, 335 So.2d at 143 n. 5, to the facts of this case. As has been noted, Comment k provides for drugs and vaccines an exception to the strict liability defined in Section 402A. L. Frumer and M. Friedman, 3 *Products Liability* § 33.02[4] (1983). Indeed, "[f]or adverse reactions to prescription drugs, section 402A does no more than codify the principles of negligence." R. Merrill, Compensation for Prescription Drug Injuries, 59 Va.L.Rev. 1, 50 (1973).[2] The district court correctly held that under Comment k, the adequacy of a manufacturer's warning regarding dangerous conditions associated with the use of its product is not only relevant to establishing a defense of assumption of risk, but, "under the facts in *this* case, the issue of adequate warning pertains to the initial

---

1. **k. *Unavoidably unsafe products.*** There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs. An outstanding example is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use of the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it *unreasonably* dangerous. The same is true of many other drugs, vaccines, and the like, many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician. It is also true in particular of many new or experimental drugs as to which, because of lack of time and opportunity for sufficient medical experience, there can be no assurance of safety, or perhaps even of purity of ingredients, but such experience as there is justifies the marketing and use of the drug notwithstanding a medically recognizable risk. The seller of such products, again with the qualification that they are properly prepared and marketed, and proper warning is given, where the situation calls for it, is not to be held to strict liability for unfortunate consequences attending their use, merely because he has undertaken to supply the public with an apparently useful and desirable product, attended with a known but apparently reasonable risk.

2. Professor Merrill indicates that Comments j and k to Section 402A clearly retain the tort concept of fault in the context of "unavoidably unsafe" products such as drugs:

Although section 402A is commonly thought to impose liability without fault, in most prescription drug cases it does not. The requirement that the product be unreasonably dangerous, as amplified by comments j and k, produces essentially the same result as traditional negligence theory in cases of the manufacturer's alleged failure to provide adequate warnings.

59 Va.L.Rev. at 31. Thus, the Restatement's blueprint for the liability of drug manufacturers substantially comports with our remodeling of Section 402A in *Casrell v. Altec Industries, Inc.*, 335 So.2d 128 (Ala.1976), and *Atkins v. American Motors Corp.*, 335 So.2d 134 (Ala.1976). In both of those cases, this court declared that Alabama's version of extended manufacturer's liability is not a "no-fault" doctrine. *Casrell v. Altec Industries, Inc.*, 335 So.2d at 132; *Atkins v. American Motors Corp.*, 335 So.2d at 138–39.

establishment of liability rather than constituting some type of affirmative defense." *Stone v. Smith, Kline & French Laboratories,* CV 81–P–1146–W (N.D.Ala. July 7, 1982). In accordance with Comment k, the district court concluded, and we agree, that in the case of an "unavoidably unsafe" yet properly prepared prescription drug,[3] the adequacy of the accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous. *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1274 (5th Cir.1974), *quoting* Restatement (Second) of Torts § 402A comment k (1965). Thus, the adequacy of the warning issued by a drug manufacturer bears on whether a plaintiff has proved a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine. See *Casrell v. Altec Industries, Inc.,* 335 So.2d at 132; *Atkins v. American Motors Corp.,* 335 So.2d at 141.

Inasmuch as the defense of assumption of risk is not at issue in this case, we see no need to address the second certified question. Therefore, we proceed to answer the third question.

Cholestatic jaundice is a risk known to attend the use of Thorazine, even though the jaundice occurs only in a small percentage of patients for whom the drug is prescribed. In seeking a determination of liability on the part of Smith, Kline & French, plaintiffs-appellants have not indicated that they are prepared to prove that the risk is unreasonable, but only that it materialized in the course of Amy Stone's treatment with Thorazine.[4] They concede that Amy Stone's physician was adequately warned of the adverse side effects, including cholestatic jaundice, which sometimes accompany the use of Thorazine. Nevertheless, they contend that the warnings issued are of no consequence, because prescribing physicians cannot accurately predict which of their patients will develop jaundice as a result of treatment with Thorazine. In essence, they assert that Amy Stone's physician was incapable of making an informed choice to prescribe Thorazine, because he was unable to predict the occurrence of an adverse reaction. We disagree.

Plaintiffs-appellants misconceive the physician's role in prescribing ethical drugs, and the significance of a drug manufacturer's warnings in undertaking that responsibility. A proper understanding of that role has been articulated by the United States Court of Appeals for the Fifth Circuit as follows:

> We cannot quarrel with the general proposition that where *prescription* drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use. This special standard for prescription drugs is an understandable exception to the Restatement's general rule that one who markets goods must warn foreseeable ultimate users of dangers inherent in his products. See Restatement (Second) of Torts, Section 388 (1965). Prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. As a medical expert, the prescribing physician can take into account the propensities of the drug as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its

---

**3.** Plaintiffs-appellants have not attempted to prove that the Thorazine administered to Amy Stone was improperly or negligently prepared.

**4.** In response to Smith, Kline & French's motion for summary judgment, plaintiffs-appellants stated:

> Plaintiffs admit that the physician of Amy Stone was so adequately warned. However, plaintiffs dispute the legal conclusion drawn from that fact by defendant. Plaintiffs' posi-

tion is that Thorazine is unreasonably dangerous and defective, under Alabama law, because the drug causes a small percentage of users to develop cholestatic jaundice. There is no way for the prescribing physician to prevent the reaction once the drug is used. The only "treatment" for the reaction is to discontinue use of the drug. These facts make the drug defective.

potential dangers. The choice he makes is an informed one, and individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as a "learned intermediary" between manufacturer and consumer.

*Reyes v. Wyeth Laboratories,* 498 F.2d at 1276. (Emphasis in original.) *Accord, Timm v. Upjohn Co.,* 624 F.2d 536, 538 (5th Cir.1980). Based on this sound reasoning, which we adopt, we answer the third certified question in the affirmative.

QUESTIONS ANSWERED.

Torbert, C.J., Maddox, Faulkner, Jones, Almon, Shores, and Beatty, JJ., concur.

Upon consideration of the response of the Alabama Supreme Court to the questions certified to that court, the judgment of the district court is

AFFIRMED.