SYLVIA LEESLEY, Plaintiff-Appellee, v. JAMES WEST, Defendant (Villa Park Pharmacy, Inc., d/b/a Villa Park Pharmacy and Liquors, *et al.*, Defendants-Appellants).

Second District   No. 2—87—0282

Opinion filed January 11, 1988.

D. Kendall Griffith, Hollis L. Webster, and H. Anne McKee, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (David P. Meyer, of counsel), for appellants.

Thomas J. Swabowski, of Barclay, Damisch & Sinson, of Chicago (Junie L. Sinson, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an interlocutory appeal by permission pursuant to Supreme Court Rule 308. (107 Ill. 2d R. 308.) Plaintiff, Sylvia Leesley, filed suit against Dr. James West, Pfizer Inc. (Pfizer), and Villa Park Pharmacy, Inc. (Villa Park), for damages resulting from severe gastrointestinal bleeding caused by the prescription drug Feldene. Dr. West prescribed the drug, which is manufactured by Pfizer, to treat plaintiff's osteoarthritis. Villa Park filled the prescription. Five of the six counts contained in plaintiff's third amended complaint (counts II through VI) were directed against Villa Park and/or Pfizer, the appellants here, based on their failure to provide plaintiff with information or warnings regarding the potential side effects of the drug. Counts II and V are strict liability claims alleging that the product was unreasonably dangerous due to the absence of adequate warnings. Counts III and VI allege that the defendants negligently failed to warn the plaintiff. Count IV alleges that the defendants breached an implied warranty of fitness for a particular purpose by failing to disclose the drug's dangerous side effects. Count I is directed against Dr. West, who is not involved in this appeal.

The relevant facts are undisputed. Peptic ulceration and gastrointestinal bleeding are known, but infrequent, side effects of Feldene. Plaintiff does not allege that Pfizer failed to adequately disclose the drug's potential hazards to the medical community in general, but that Villa Park and Pfizer failed to directly warn the plaintiff or to ensure that the relevant warnings reached the ultimate consumers of the drug. Villa Park and Pfizer filed a motion for summary judgment, claiming that pharmacists and drug manufacturers have no duty to directly warn the consumer about the potential hazards of a prescription drug. The trial court granted defendants' motion with respect to the warranty claim (count IV), but denied the motion as to all other counts. It then certified that immediate review of the following ques-

tions pursuant to Rule 308 (107 Ill. 2d R. 308) may materially advance the ultimate termination of this litigation:

"(a) Whether defendant pharmaceutical manufacturer, PFIZER, has a duty to warn prescription drug consumer of known risks and side effects of Feldene by providing written information in any adequate form and exerting reasonable effort to have this information conveyed to the consumer in any reasonable manner.

(b) Whether defendant pharmacist, VILLA PARK PHARMACY, had a duty to pass on to the consumer a copy of written information on known risks and side effects provided by the manufacturer of the drug Feldene."

Defendants claim that the "learned intermediary" doctrine places the responsibility on physicians alone to warn patients about the potential side effects of prescription drugs. Plaintiff disputes both the existence and validity of the doctrine.

After the trial court entered its order below, our supreme court had occasion to consider the "learned intermediary" doctrine in *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507. The plaintiff in *Kirk* was a passenger injured in a car crash, which plaintiff claimed was caused by his driver's incapacitation due to the ingestion of certain prescribed medications. (117 Ill. 2d at 514.) Plaintiff sued the hospital which administered the drugs and the physicians who prescribed them, claiming that they had negligently failed to warn the driver of the drugs' dangerous side effects. He also sued the hospital and the manufacturers of the drugs on a strict liability theory. (117 Ill. 2d at 515.) The *Kirk* court stated that a prescription drug may be deemed unreasonably dangerous, subjecting the manufacturer or supplier to strict liability, if it is not accompanied by an adequate warning. (117 Ill. 2d at 517, citing Restatement (Second) of Torts §402 A, comment *k* (1965).) The court described the "learned intermediary" doctrine as follows:

"The rule *** provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients. [Citations.]" (*Kirk*, 117 Ill. 2d at 517-18.)

The court then quoted language from *Stone v. Smith, Kline & French Laboratories* (11th Cir. 1984), 731 F.2d 1575, in which that court explained that, because of the complexity of prescription drugs and the varied effects they have on users, the doctrine requires manufacturers of prescription drugs to warn only prescribing physicians of the inher-

ent dangers of their products, providing an understandable exception from the usual rule that manufacturers must provide appropriate warnings to all foreseeable consumers. *Kirk*, 117 Ill. 2d at 518-19, citing *Stone v. Smith, Kline & French Laboratories* (11th Cir. 1984), 731 F.2d 1575, and *Reyes v. Wyeth Laboratories* (5th Cir. 1974), 498 F.2d 1264.

The *Kirk* court stated that drug manufacturers have a variety of available methods to communicate warnings to the medical profession. (*Kirk*, 117 Ill. 2d at 519.) It concluded:

> "The doctor, functioning as a learned intermediary between the prescription drug manufacturer and the patient, decides which available drug best fits the patient's needs and chooses which facts from the various warnings should be conveyed to the patient, and the extent of disclosure is a matter of medical judgment. [Citations.] As such, we believe the learned intermediary doctrine is applicable here and that there is no duty on the part of manufacturers of prescription drugs to directly warn patients." 117 Ill. 2d at 519.

██ █ Contrary to plaintiff's contention, therefore, our supreme court has adopted the learned intermediary doctrine. Although the plaintiff filed only a strict liability claim against the drug manufacturers in *Kirk*, we conclude that the doctrine necessarily applies with equal force to a negligence claim. In cases adopting the doctrine, the courts have applied it as frequently to negligence claims as to strict liability actions. (See, *e.g., Reyes v. Wyeth Laboratories* (5th Cir. 1974), 498 F.2d 1264; *Hoffman v. Sterling Drug, Inc.* (3d Cir. 1973), 485 F.2d 132; *Stevens v. Parke, Davis & Co.* (1973), 9 Cal. 3d 51, 507 P.2d 653, 107 Cal. Rptr. 45.) In fact, the *Kirk* court quoted language from the *Stone* decision referring specifically to section 388 of the Restatement (Second) of Torts (*Kirk*, 117 Ill. 2d at 518, citing *Stone*, 731 F.2d at 1579, *Reyes v. Wyeth Laboratories*, 498 F.2d at 1276, and Restatement (Second) of Torts §388 (1965)), which applies to a supplier's *negligent* failure to warn. It appears that, where the issue is the manufacturer's failure to warn of the dangerous side effects of a drug, rather than negligence in the manufacturing process, the manufacturer's duty is essentially the same under either a negligence or strict liability theory. (See *Sterling Drug, Inc. v. Yarrow* (8th Cir. 1969), 408 F.2d 978, 992-93 (concluding that the duties imposed by sections 388 (negligence) and 402 A (strict liability) of the Restatement (Second) of Torts (1965) are the same, regardless of how they are characterized— the manufacturer must give a warning that is reasonable under the circumstances).) We therefore must conclude that Pfizer had no duty,

under either theory, to directly warn consumers of the potential side effects of Feldene.

■■ We find plaintiff's attempts to distinguish *Kirk* unconvincing. While plaintiff correctly points out that the *Kirk* court stated that the plaintiff there had abandoned his initial contention that drug manufacturers had a duty to warn the public generally (*Kirk*, 117 Ill. 2d at 517), the court nevertheless considered and adopted the learned intermediary doctrine (117 Ill. 2d at 519 (apparently considering the issue because the appeal involved a dismissal for failure to state a cause of action)). And while the court in *Kirk* concluded that the plaintiff's injury was not foreseeable by the defendant-drug manufacturers, that holding was necessary, in addition to the court's reliance on the doctrine, because the plaintiff had also alleged that the manufacturers' warnings to the doctors were inadequate. (117 Ill. 2d at 519.) The first certified question is answered in the negative.

■■ ■ We turn next to the issue of the pharmacist's duty to convey to its customers any relevant warnings given to it by the manufacturer of a prescription drug. Villa Park received the Feldene pills it distributed to plaintiff in a bulk container to which Pfizer had glued a "package insert" describing the drug's chemical properties and potential hazards. Villa Park did not convey any of that information to plaintiff, nor was it instructed to do so by Dr. West.

Plaintiff filed both negligence and strict liability claims against Villa Park. We will first address the strict liability claim. Many prescription drugs are unavoidably unsafe products. (Restatement (Second) of Torts §402 A, comment *k* (1965).) Such a product is deemed to be unreasonably dangerous, subjecting the manufacturer or seller to liability, only if not manufactured properly or not accompanied by appropriate directions and warnings. (See *Kirk*, 117 Ill. 2d at 517; Restatement (Second) of Torts §402 A, comment *k* (1965).) As discussed above, however, the manufacturer's duty to warn extends only to prescribing physicians. We must conclude, therefore, that where the manufacturer gives the required warnings to the prescribing physician and the drug is distributed in the usual manner (*i.e.*, prescribed for the plaintiff by a physician), the drug is not an unreasonably dangerous product. (See *Ramirez v. Richardson-Merrell, Inc.* (E.D. Pa. 1986), 628 F. Supp. 85, 87; *Makripodis v. Merrell-Dow Pharmaceuticals, Inc.* (1987), 361 Pa. 589, 598, 523 A.2d 374, 378-79.) To illustrate, Pfizer shipped a bulk container of Feldene to Villa Park with only a single package insert. Because Pfizer had no duty to provide warnings directly to customers, the product as shipped was not unreasonably dangerous (and would not have been even if no inserts had

been included at all). We would have to conclude that the product somehow became unreasonably dangerous in Villa Park's hands in order to hold that Villa Park was nevertheless required, at the risk of being held strictly liable, to provide every customer whose prescription was filled from that bulk container with a copy of the information contained in that single package insert. Such a conclusion would obviously be unreasonable. We therefore conclude that it would be illogical and inequitable under a strict liability theory to impose a duty on the pharmacist with respect to a prescription drug that is not imposed on the drug's manufacturer. See *Ramirez v. Richardson-Merrell, Inc.*, 628 F. Supp. at 87.

 Our conclusion with respect to the negligence claim must ultimately be the same. Plaintiff alleges that Villa Park had an independent duty to warn her of the drug's dangerous side effects. The determination of whether a legal duty exists is a question of law for the court. (*Kirk*, 117 Ill. 2d at 525; *Wimmer v. Koenigseder* (1985), 108 Ill. 2d 435, 440.) The primary factors a court considers in making that determination include: (1) the foreseeability of injury to the plaintiff as a result of defendant's actions or inactions; (2) the magnitude of the burden to defendant of guarding against the injury and the consequences of placing that burden on the defendant; and (3) the currently prevailing public policies and social attitudes of the community. *Kirk*, 117 Ill. 2d at 526-27; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 29; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.

No Illinois court has yet decided whether a pharmacist has an independent duty to warn its customers of known, potential hazards of a prescription drug. In *Jones v. Irvin* (S.D. Ill. 1985), 602 F. Supp. 399, however, a Federal district court, applying Illinois law, held that placing on the pharmacist a duty to warn either the physician or the customer would "compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability." (602 F. Supp. 399, 402, cited with approval in *Kirk*, 117 Ill. 2d at 526.) In *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124 (also cited with approval in *Kirk*, 117 Ill. 2d at 526), an Illinois appellate court held that a pharmacist had no duty to warn a physician who prescribed drugs for a patient in excessive quantities. *Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d at 127.

 The *Kirk* court did not directly address the issue, basing its dismissal of plaintiff's action against the hospital which dispensed the drugs in that case primarily on its conclusion that plaintiff's injury was not reasonably foreseeable. (*Kirk*, 117 Ill. 2d at 526.) However, that holding was based, in part, on the fact that the hospital's employ-

ees did not know or have reason to know that the doctors had not given the relevant warnings. (117 Ill. 2d at 526.) Similarly, plaintiff has made no allegation here that Villa Park knew or could have known that plaintiff had not received the applicable warnings. The foreseeability of injury to an individual consumer in the absence of any particular warning also varies greatly depending on the medical history and condition of the individual—facts which we cannot reasonably expect the pharmacist to know. (*Eldridge v. Eli Lilly & Co.*, 138 Ill. App. 3d at 127.) The fact that manufacturers of a prescription drug cannot adequately evaluate the effect of the drug on any particular patient is one of the predominant reasons that courts have adopted the learned intermediary doctrine exempting those manufacturers from the duty to directly warn consumers. *Kirk*, 117 Ill. 2d at 518, citing *Stone*, 731 F.2d 1575.

■ Additionally, we conclude that requiring Villa Park to convey the warnings it receives to its customers would be very burdensome, even though it did receive the relevant cautionary information from the manufacturer here, while the hospital in *Kirk* did not. (*Kirk*, 117 Ill. 2d at 526.) Manufacturers of prescription drugs, as discussed above, are not required to provide cautionary information directly to the consumers of the drugs. Imposing that burden on pharmacists, therefore, may well mean they must bear the additional costs of reproducing the material they receive.

Even if we assume, as plaintiff urges, that pharmacists could obtain unlimited copies of the warnings from the manufacturers, they would face the still oppressive burden of retaining and cataloguing every document received to be certain each is distributed with the appropriate drug. Every method we can conceive of to reduce that burden seems necessarily to involve a complementary increase in the manufacturer's burden, either in altering the way prescription drugs are packaged for shipment to pharmacies, or in adding simplified or condensed versions of the information the manufacturers currently provide to pharmacies. And if manufacturers acquiesce in supplying the same information for distribution to consumers that they provide pharmacists and doctors, the exemption afforded prescription drug manufacturers by the learned intermediary doctrine and the policies behind the doctrine would be effectively abrogated. Placing this burden on pharmacists is simply inconsistent with the exemption afforded manufacturers by the learned intermediary doctrine. (See *Ramirez v. Richardson-Merrell, Inc.*, 628 F. Supp. at 88; *Makripodis v. Merrell-Dow Pharmaceuticals, Inc.*, 361 Pa. Super. at 596, 523 A.2d at 378.) We must conclude, as did the supreme court in *Kirk*, that "[t]he ex-

tent of warnings to patients concerning prescription drugs *** is within the discretion of the physician." *Kirk*, 117 Ill. 2d at 524.

Plaintiff additionally argues that requiring warnings to prescription drug consumers from sources other than the physician need not impair the physician-patient relationship and will help to ensure that patients actually receive essential warnings. We do not conclude by this decision that warnings beyond those given by the physician are harmful or to be discouraged. We simply decline to subject pharmacists to liability for failure to give warnings which the physician has not requested. We believe that this position is most consistent with this State's legislative policy against expanding the liability risks of health professionals. (See *Kirk*, 117 Ill. 2d at 527, citing *Bernier v. Burris* (1986), 113 Ill. 2d 219.) The second certified question is answered in the negative.

Having answered both certified questions in the negative, we reverse that part of the trial court's order denying defendants' motion and remand this cause with directions to enter summary judgment for Villa Park on counts II and III and for Pfizer on counts V and VI of plaintiff's third amended complaint.

Reversed and remanded.

LINDBERG, P.J., and INGLIS, J., concur.