FRANK FAKHOURI, Special Adm'r of the Estate of Joseph Fakhouri, Deceased, Plaintiff-Appellant, v. DONALD TAYLOR *et al.*, Defendants-Appellees (Boniface Dy, Defendant).

First District (1st Division)   Nos. 1—91—3641, 1—92—1416 cons.

Opinion filed June 7, 1993.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy and Kevin G. Burke, of counsel), for appellant.

Querrey & Harrow, Ltd., of Chicago (Michael Resis and Dennis A. Marks, of counsel), for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Frank Fakhouri, brought this action for the wrongful death of Joseph Fakhouri, who plaintiff alleged died as a result of an overdose of Imipramine, a psychiatric drug. Plaintiff sued Dr. Boniface Dy, the physician who prescribed the drug, the K mart Corporation (K mart), at whose pharmacy the prescriptions were filled, and two of K mart's employees, Robert Kelly and Donald Taylor, the pharmacists who actually filled the prescriptions. Relevant here is count II of the complaint, in which plaintiff alleged that K mart, Kelly, and Taylor (collectively defendants) had been negligent in filling prescriptions for quantities of Imipramine beyond those normally prescribed

and in failing to warn either Dr. Dy or Joseph Fakhouri that the prescriptions were for an excessive and unsafe quantity. Plaintiff appeals from two orders of the circuit court granting defendants' motions to dismiss.[1] In this appeal, plaintiff asks this court to impose upon pharmacists a duty to warn their customers of prescribed dosages of medication in excess of the manufacturer's recommended limits. We affirm the orders of the circuit court.

We initially note that this is not a case of first impression as both the second and fourth districts of the appellate court previously have addressed the issue now before us. In both cases, the courts have rejected the imposition of the duty urged by plaintiff here.

In *Leesley v. West* (1988), 165 Ill. App. 3d 135, 518 N.E.2d 758, *appeal denied* (1988), 119 Ill. 2d 558, 522 N.E.2d 1246, plaintiff filed suit against her doctor, a pharmacy, and a pharmaceutical company for damages resulting from gastrointestinal bleeding allegedly caused by a prescription drug manufactured by the pharmaceutical company, prescribed by her doctor, and supplied by the pharmacy. Plaintiff charged the pharmacy with negligence in that it failed to warn her of the drug's possible adverse side effects. (*Leesley*, 165 Ill. App. 3d at 137.) The appellate court, however, refused to subject pharmacists to liability for failure to give warnings which the physician had not requested to be given to the patient, noting such a duty would abrogate the learned intermediary doctrine. (*Leesley*, 165 Ill. App. 3d at 142.) That doctrine provides that manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients. (See *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 517, 513 N.E.2d 387, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077.) As a result, the doctrine prevents the imposition of a duty upon drug manufacturers to warn patients directly. (*Kirk*, 117 Ill. 2d at 519.) In view of the doctrine, the appellate court could not place a greater burden on pharmacists than that which was placed upon the drug's manufacturer, concluding that the " 'extent of warnings to patients concerning prescription

---

[1] Defendant Taylor was not served with a summons at the time defendants K mart and Kelly filed their motion to dismiss. Taylor subsequently was served and adopted K mart and Kelly's motion to dismiss as his own. The circuit court granted K mart and Kelly's motion on October 10, 1991, and plaintiff appealed. The circuit court dismissed the action with regard to defendant Taylor on April 1, 1992, and plaintiff appealed that order as well. Both appeals were consolidated by order of this court.

drugs *** is within the discretion of the physician.' " *Leesley*, 165 Ill. App. 3d at 143, quoting *Kirk*, 117 Ill. 2d at 524.

A similar approach was taken in *Eldridge v. Eli Lilly & Co.* (1985), 138 Ill. App. 3d 124, 485 N.E.2d 551, upon which *Leesley* relied. In *Eldridge*, the plaintiff brought a wrongful death suit against, *inter alia*, the pharmacy which had filled the decedent's prescriptions. Plaintiff charged the pharmacy with negligence in that it had filled the prescriptions for quantities of the drug beyond those normally prescribed and had failed to warn the decedent's doctor that the prescriptions were for an excessive quantity. The decedent's death was the result of an overdose of the drug. (*Eldridge*, 138 Ill. App. 3d at 125-26.) That appellate court also refused to impose upon pharmacists a duty to warn of excessive prescriptions. The court noted that drug manufacturers had a duty to warn doctors of the dangerous propensities of a drug. It is the doctor who acts as a "learned intermediary" on behalf of the consumer. (*Eldridge*, 138 Ill. App. 3d at 127; see also *Kirk*, 117 Ill. 2d at 526 (citing *Eldridge* with approval).) Therefore, it is the physician who "must evaluate the patient's needs, assess the risks and benefits of available drugs, prescribe one and supervise its use." (*Eldridge*, 138 Ill. App. 3d at 127.) Because the propriety of a prescription depends not only on the propensities of the drug, but also on the patient's condition, the court reasoned that to impose such a duty upon pharmacists would "require the pharmacist to learn the customer's condition and monitor his drug usage. To accomplish this, the pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license." *Eldridge*, 138 Ill. App. 3d at 127. See also *Jones v. Irvin* (S.D. Ill. 1985), 602 F. Supp. 399, 402 (Federal court sitting in diversity declined to impose a similar duty upon a pharmacy, noting that such a duty would "only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability").

Plaintiff acknowledges both *Eldridge* and *Leesley*, but suggests that this court need not follow them because the first district has taken a seemingly opposite view of the issue in *Jones v. Walgreen Co.* (1932), 265 Ill. App. 308. That case, however, provides no consolation to plaintiff as it is factually distinguishable from the present case. In *Jones*, a pharmacist had difficulty understanding the prescription in question and filled it with a dangerous drug *not* indicated in the prescription. The appellate court held that when doubt exists as to what drug is intended, a pharmacist has a duty to take all reasonable precautions to avoid filling the prescription with the wrong drug. Here,

however, plaintiff alleged that defendants did nothing more than fill the prescriptions as ordered by the physician.

Although our supreme court has not addressed this issue directly, it appears that it has adopted the learned intermediary doctrine relied upon by both *Eldridge* and *Leesley*. For example, in *Kirk*, plaintiff was injured while a passenger in a car driven by Daniel McCarthy, a former psychiatric patient at the hospital. Doctors at the hospital prescribed various drugs for McCarthy on the day he was discharged. Following that discharge, McCarthy consumed an alcoholic beverage. Later that same day, he was involved in the automobile accident which gave rise to plaintiff's injuries. Plaintiff subsequently brought suit against, *inter alia*, the hospital for its alleged negligent failure to warn McCarthy about the drugs' possible effects on his mental and physical abilities. (*Kirk*, 117 Ill. 2d at 515.) In affirming the circuit court's dismissal of the action against the hospital, the court concluded that the plaintiff's injury was not reasonably foreseeable. That holding was based on the fact that hospital employees did not know or have reason to know that the doctors had not given the relevant warnings. (*Kirk*, 117 Ill. 2d at 526.) The court found that the imposition of such a duty on hospital employees would be "cumbersome" and noted that, in

> "analogous circumstances, negligence claims against pharmacists for failure to warn concerning overconsumption of drugs have been dismissed primarily because the manufacturers' warnings about prescription drugs are to be given to the physicians, who then had the duty to warn the patients." (*Kirk*, 117 Ill. 2d at 526, citing *Eldridge*, 138 Ill. App. 3d 124, 485 N.E.2d 551 and *Jones*, 602 F. Supp. 399.)

This view was iterated recently in *Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 605 N.E.2d 557, where, in *dicta*, the court stressed that, "[i]n our opinion, consumers should principally look to their prescribing physician to convey the appropriate warnings regarding drugs, and it is the prescribing physician's duty to convey these warnings to patients." *Frye*, 153 Ill. 2d at 34, citing *Kirk*, 117 Ill. 2d at 524.

■ We agree with the conclusions reached in *Leesley* and *Eldridge*. Determining which medication is to be utilized in any given case requires an individualized medical judgment, which, in our opinion, only the patient's physician can provide. That physician, having prescribed the drug, presumably knows the patient's current condition, as well as the patient's complete medical history. To impose a duty to warn on the pharmacist would be to place the pharmacist in

the middle of the doctor-patient relationship, *without* the physician's knowledge of the patient. Furthermore, under Illinois law, the duty of the manufacturer runs to the physician and not to the patient. (*Kirk*, 117 Ill. 2d at 519.) Therefore, it is illogical and unreasonable to impose a greater duty on the pharmacist who properly fills a prescription than is imposed on the drug's manufacturer.

Plaintiff, however, insists that the Illinois Pharmacy Practice Act of 1987 (225 ILCS 85/1 *et seq.* (West 1992)) recognizes that "a pharmacist has independent duties to his or her patients," which supports the imposition of the duty advocated in the present case. We disagree.

In rejecting a similar argument, the appellate court in *Eldridge* stated that it was "evident that [in enacting the legislation] the legislature was not concerned with making pharmacists perform a safety check on physician's [*sic*] prescriptions." (*Eldridge*, 138 Ill. App. 3d at 129.) Although the court interpreted a version of the Act not now in effect (Ill. Rev. Stat. 1983, ch. 111, par. 4001, repealed by Pub. Act 81–999, §4.4, eff. December 31, 1987), the court's conclusion was well founded. Our legislature has deemed the practice of pharmacy a "professional practice" which affects the health, safety, and welfare of the citizens of this State. (225 ILCS 85/1 (West 1992).) As such, the profession is subject to "regulation and control in the public interest" with only "qualified persons" being allowed to practice pharmacy. (225 ILCS 85/1 (West 1992).) To that end, the Act provides for a State Board of Pharmacy (225 ILCS 85/10 (West 1992)) and for the examination and licensing of pharmacists. (225 ILCS 85/6, 85/7 (West 1992)). The Act also established the minimum requirements for pharmacy facilities, their stock rooms and equipment in order to ensure the security, storage, and accurate measurement of the drugs. (See 225 ILCS 85/15 (West 1992).) The Act mandates that pharmacists list on the containers of the prescribed drugs the names of the pharmacy filling the prescription, of the doctor prescribing the drug, and the patient to whom it is prescribed. (225 ILCS 85/22 (West 1992).) In addition to that information, pharmacists must list their own initials, the serial number of the prescription, and the dosage instructions on the package. (225 ILCS 85/22 (West 1992).) The Act also prohibits a pharmacist from substituting a prescribed drug for another unless authorized by the prescribing doctor. (225 ILCS 85/25 (West 1992).) The Act is silent as to any warnings which must be given to the customer, either orally or as part of the above labelling requirement. Our review of the statute indicates that the aim of the Act was to regulate the legal storage and distribution of prescription drugs and to promulgate standards within which pharmacies and pharmacists would operate.

Nothing in the Act speaks to the duty sought to be imposed in the present case. Indeed, the legislature explicitly stated that "[n]othing contained in any Section of this Act shall apply to or in any manner interfere with *** the lawful practice of any physician *** or prevent him from supplying to his bona fide patients such drugs, medicines, or poisons as may seem to him proper." (225 ILCS 85/4 (West 1992).) The inclusion of this language would indicate that it is the physician, not the pharmacist, who ultimately decides which drugs, if any, to prescribe to the patient.

■ To be legally sufficient, a negligence complaint must allege facts establishing the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. (*Kirk*, 117 Ill. 2d at 525.) The determination of whether a legal duty exists is a question of law for the court. (*Kirk*, 117 Ill. 2d at 525.) Because plaintiff has failed to allege the existence of a legal duty owed to him by the defendants, the circuit court correctly granted defendants' motions to dismiss.

The orders of the circuit court dismissing count II of plaintiff's complaint are affirmed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.