SUSAN PLUTO, Plaintiff-Appellant, v. SEARLE LABORATORIES, a Division of G.D. Searle and Company, Defendant-Appellee.

First District (6th Division)   No. 1—95—3580

Opinion filed December 26, 1997.—Rehearing denied February 3, 1998.

394

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg and Suzanne M. Bonds, of counsel), and Pardieck, Gill & Vargo, of Seymour, Indiana (Roger L. Pardieck, of counsel), for appellant.

Sidley & Austin, of Chicago (Anne E. Rice, of counsel), and Venable, Baetjer & Howard, L.L.P., of Baltimore, Maryland (Paul F. Strain, of counsel), for appellee.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff Susan Pluto (Pluto) appeals from a jury verdict in favor of defendant Searle Laboratories (Searle). Pluto raises 14 separate issues on appeal. Our determination of this case necessitates our reaching only one of these issues: whether Searle owed a duty of care to warn Pluto in this product liability case alleging strict liability. Jurisdiction is vested in this court pursuant to Supreme Court Rule 301 (155 Ill. 2d R. 301).

For the reasons that follow, we affirm the judgment of the circuit court.

The relevant facts are as follows. In May of 1978, Pluto opted to have Searle's Copper 7 Intrauterine Device (Cu-7) inserted as a form

of birth control. At that time, the packaging on the Cu-7 included a mandatory warning statement that listed the potential side effects associated with the use of the product. Specifically, the label provided the following warning:

"An increased risk of pelvic inflammatory disease associated with the use of IUDs has been reported. While unconfirmed, this risk appears to be the greatest for young women who are nulliparous and/or who have a multiplicity of sexual partners. *** Therefore, it is recommended that patients be taught to look for symptoms of pelvic inflammatory disease. The decision to use an IUD in a particular case must be made by the physician and patient with the consideration of a possible deleterious effect on future fertility."

Defense expert Dr. David Grimes testified that this warning exceeded the IUD labeling requirements promulgated by the Federal Food and Drug Administration (FDA).

In August of 1981, Pluto had the Cu-7 removed after she contracted a sexually transmitted disease (STD) which resulted in a pelvic inflammatory disease (PID). Eventually the PID progressed to a point where it was determined that Pluto required a total abdominal hysterectomy, which was performed on September 10, 1981.

Pluto alleged at trial that Searle inadequately warned both doctors and patients of the potential risks associated with the use of the Cu-7. Specifically, Pluto alleges that: (1) Searle did not properly warn physicians and patients of the increased risk of contracting an STD and/or PID when using an intrauterine device (IUD) as compared to other forms of birth control; and (2) Searle failed to warn that the Cu-7 should not be given to women who were under 25 years of age, nulliparous (never had a child), and who had multiple sexual partners. Pluto also alleged that Searle's testing protocol for the Cu-7 was flawed; however, we do not reach that issue.

We begin our analysis with Pluto's claim that Searle did not properly warn physicians and patients of the increased risk of contracting an STD and/or PID when using an IUD as compared to other forms of birth control. Pluto bases her argument on a report prepared by one of Searle's physicians and on the testimony of two experts.

Defense expert Dr. Grimes testified that condoms, oral contraceptives and diaphragms each provide varying levels of protection from STDs and/or PID. However, according to Dr. Grimes, the beneficial effect of oral contraceptives was not known until 1980, and the beneficial effect of diaphragms was not known until 1986. Plaintiff's expert, Dr. Richard Sweet, testified via an evidence deposition that condoms, oral contraceptives and diaphragms help reduce the risk of

contracting an STD and/or PID. Dr. Sweet also spoke before the FDA in June of 1977. By that date, it had been determined that women who used an IUD faced an increased risk of acquiring PID as compared to women who were not using IUDs. This finding was reflected in a report prepared by one of Searle's doctors, Dr. Francis O'Brien, who was present at the FDA hearing. Based on the report and the testimony of the two experts, Pluto alleges that Searle had a duty to warn about the alleged increased risk of contracting an STD or PID when using an IUD as compared to other forms of birth control.

■ Generally, a manufacturer of a product has a duty to warn potential users of the product's dangerous propensities. *Martin v. Ortho Pharmaceutical Corp.*, 169 Ill. 2d 234, 238-39, 645 N.E.2d 431 (1996). However, this duty is not absolute. Under the learned intermediary doctrine, manufacturers of prescription drugs need only advise prescribing physicians of a drug's known dangerous propensities, and the duty to warn the potential user falls on the physician. *Martin*, 169 Ill. 2d at 238-39. Here, plaintiff alleges that Searle had a duty to warn about the alleged increased risk of contracting an STD or PID when using an IUD (a prescription drug) as compared to other forms of birth control. Ordinarily, this proposed duty would extend only to the prescribing physician. However, we do not even reach the point of application of the learned intermediary doctrine due to our finding that Searle had no duty to warn patients or physicians of the relative effectiveness of the Cu-7 as compared to other forms of birth control.

■ Initially, we note that plaintiff's argument is based on a faulty premise. Both Dr. Grimes and Dr. Sweet testified that condoms, oral contraceptives and diaphragms provide partial protection against STDs and/or PID. At no point did plaintiff allege that IUDs were designed to provide protection from disease, nor did plaintiff argue that IUDs cause disease. Further, no one testified to that effect. Yet, plaintiff argues that defendant had a duty to warn potential users of the Cu-7 about the "increased risk" of contracting an STD or PID while using an IUD. The term "increased risk" in this context is an anomaly. Condoms, oral contraceptives, diaphragms, and IUDs are each designed to act as a form of contraception. However, only condoms, oral contraceptives and diaphragms have the added benefit of providing protection from disease. IUDs were not designed to protect users from STDs or PID, and IUDs do not cause disease. Thus, it is incorrect to argue that the use of the IUD results in an "increased risk" of contracting a disease. Accordingly, we find plaintiff's argument unavailing.

In reaching this decision, we find the sixth circuit case of *Ackley v. Wyeth Laboratories*, 919 F.2d 397 (6th Cir. 1990), to be instructive. In *Ackley*, the plaintiffs brought an action against the defendant drug manufacturer for defective design and failure to warn under the theories of strict liability and negligence. Specifically, the plaintiff alleged that Wyeth had a duty to warn potential users that a competitor's vaccine was safer. Similar to the present case, Wyeth also was in possession of documents which suggested that its product resulted in an increased risk of harm to the user as compared to similar products in the marketplace. The sixth circuit disagreed with the plaintiff and found that "[t]he manufacturer is obligated to make a reasonable disclosure of all the risks inherent in its own drug. [Citation.] It is not obligated to provide a comparison of its drug with others." *Ackley*, 919 F.2d at 405.

In the case *sub judice*, we reach the same result. Searle provided a more than adequate warning of the risks associated with the use of its product on the label of the Cu-7. No further warning was necessary. Searle is under no duty to provide information on other products in the marketplace. Such a duty would require drug manufacturers to rely upon the representations made by competitor drug companies. This arrangement would only lead to greater liability on behalf of drug manufacturers that were required to vouch for the efficacy of a competitor's product. Furthermore, such a duty would raise serious implications regarding the free flow of commerce in that industry. As such, we decline to impose the duty proposed by plaintiff and hold that Searle was under no duty to warn physicians and patients of the increased risk of contracting an STD and/or PID when using an IUD as compared to other forms of birth control.

Pluto next alleges that Searle failed to warn that the Cu-7 should not be given to individuals who were under the age of 25, nulliparous, and who had multiple sexual partners. Pluto bases this argument on information contained in the above-discussed report prepared by Dr. O'Brien after the FDA hearing. In that report, Dr. O'Brien noted that the users most susceptible to infection and subsequent loss of fertility were those nulliparous women under the age of 26 who had multiple sex partners. Dr. O'Brien also suggested in the report that Searle convene a meeting of its legal, regulatory, clinical and marketing personnel to determine whether any labeling changes should be made because "[w]e might be at a medico-legal disadvantage if we do not make a stronger warning." Based on this information, Pluto alleges that Searle had a duty to warn that the Cu-7 should not be used by women who were under 25, nulliparous, and who had multiple sex partners.

██ In order to recover against a manufacturer in a suit alleging strict liability, a plaintiff must prove that: (1) his or her injury resulted from a condition of the product; (2) the condition was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturer's control. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 540, 662 N.E.2d 1248 (1996). Accordingly, we first address the source of Pluto's injuries and conclude that it was not the Cu-7 that caused Pluto's infection and subsequent infertility. As plaintiff's counsel noted in opening argument at trial:

> "In order to have an infection, you have to have a bacteria. You are not going to get infection [*sic*] without bacteria. IUD's are not bacteria. We have never said they are. And IUD's do not directly cause an infection."

To prevail in a count alleging strict liability, a plaintiff must prove that his or her injuries were caused by a distinct defect in the product. *Hunt v. Blasius*, 74 Ill. 2d 203, 211, 384 N.E.2d 368 (1978); *Depre v. Power Climber, Inc.*, 263 Ill. App. 3d 116, 118, 635 N.E.2d 542 (1994). Here, we find that Searle had no duty to warn women in the suspect category that use of the IUD may result in an increased risk of infection because it is not Searle's product which causes infection; rather, it is the lifestyle choice of persons in the suspect category that places them at risk for the contraction of sexually transmitted diseases. Accordingly, plaintiff's argument has no merit.

The existence of a duty is a question of law. *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 542, 582 N.E.2d 108 (1991); *Adame v. Munoz*, 287 Ill. App. 3d 181, 183, 678 N.E.2d 26 (1997). In light of our finding that Searle had no duty, we need not address plaintiff's remaining issues on appeal. Furthermore, based on our holding, the trial court should have granted defendant's motion for a directed verdict. In any event, the jury returned a correct verdict. We affirm the jury's verdict for the reasons set forth above.

Affirmed.

ZWICK and THEIS, JJ. concur.