753 N.E.2d 1085 (2001)
323 Ill. App.3d 1039
257 Ill.Dec. 459
Mary L. FRIEDL, Plaintiff-Appellant,
v.
AIRSOURCE, INC., a Corporation, f/k/a Medsource, Inc., Stephens Medical, Inc., d/b/a Woundcure, Inc., Defendants-Appellees.
No. 1-00-0877.
Appellate Court of Illinois, First District, Fourth Division.
July 5, 2001.
*1086 Peter R. Coladarci, Peter R. Coladarci, Ltd., Chicago, for Appellant.
David Blumenfeld, Ltd., Chicago (William C. Coughlin, of counsel), for Appellees.
Justice BARTH delivered the opinion of the court:
Plaintiff Mary L. Friedl filed a complaint against defendants Airsource, Inc., and Stephens Medical, Inc. (collectively defendants), alleging their negligence had contributed to disabling oxygen burns she sustained to her feet. The trial court granted defendants' motion to dismiss pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 1998)) and Friedl now appeals that order.

BACKGROUND
The following is contained in the complaint. Friedl suffers from multiple sclerosis. As a result, she is prone to developing sores and lesions on her feet. In an attempt to reduce the pain associated with the lesions, Friedl sought and obtained a prescription from her physician for a portable hyperbaric oxygen chamber. Friedl leased a "Hyper-pulse" intermittent topical oxygen chamber from defendants which delivered it to her home.
Friedl used the machine for several weeks, but the condition of her feet continued to deteriorate. When Friedl complained to defendants, they told her she needed to use the machine for longer periods of time. Friedl continued to use the machine and suffered oxygen burns to her feet as a result. Friedl alleged the oxygen burns were caused by defendants' failure to instruct her properly on the operation of the machine. Specifically, she alleged that defendants did not instruct her to put water into the machine in order to humidify the oxygen during use, that they did not provide her with the necessary available video and written materials on the machine's use and operation and that the operating instructions they did give her were misleading and insufficient.
Defendants filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Illinois Code of Civil Procedure (Code). (735 ILCS 5/2-615, 2-619 (West 1998)). Defendants' section 2-619 motion argued that because the machine was prescribed for Friedl's use by her physician and defendants merely delivered the machine, the learned intermediary doctrine insulated defendants from liability. The trial court dismissed the action against defendants on section 2-619 grounds and this appeal followed.

ANALYSIS
Section 2-619 of the Code provides the means by which a defendant may obtain a summary disposition of issues of law or easily proved issues of fact. Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill.2d 112, 115, 189 Ill.Dec. 31, 619 N.E.2d 732 (1993). For purposes of a section 2-619 motion, all well-pleaded facts in the complaint are deemed admitted and only the legal sufficiency of the complaint is at issue. Kubian v. Alexian Brothers Medical Center, 272 Ill.App.3d 246, 250, 209 Ill.Dec. 303, 651 N.E.2d 231 (1995). The granting of a section 2-619 motion to dismiss is given de novo review on appeal. Kedzie & 103rd Currency Exchange, 156 Ill.2d at 115-16, 189 Ill.Dec. 31, 619 N.E.2d 732.
The learned intermediary doctrine was adopted by our supreme court in Kirk v. Michael Reese Hospital & Medical Center, 117 Ill.2d 507, 111 Ill.Dec. 944, 513 N.E.2d 387 (1987). The Kirk court found that under the learned intermediary doctrine, *1087 prescription drug manufacturers' duty to warn of a drug's known dangerous propensities extended only to prescribing doctors. Kirk, 117 Ill.2d at 517, 111 Ill.Dec. 944, 513 N.E.2d 387. The doctors, in turn, using their medical judgment, had a duty to convey those warnings to their patients. Kirk, 117 Ill.2d at 517, 111 Ill.Dec. 944, 513 N.E.2d 387. The court recognized that prescription drugs were complex medicines with varied effects and that a physician's selection of a particular drug and drug warnings for a particular patient was an informed one, based on his individual knowledge of the drug's propensities and his patient's susceptibilities. Kirk, 117 Ill.2d at 518-19, 111 Ill.Dec. 944, 513 N.E.2d 387. Because the physician thus acted as a "learned intermediary" between the manufacturer and the consumer with prescription drugs, a manufacturer had fulfilled its duty to warn if it had informed the physician of the drug's known dangerous effects. Kirk, 117 Ill.2d at 519, 111 Ill.Dec. 944, 513 N.E.2d 387.
This court has extended the learned intermediary doctrine set forth in Kirk to pharmacists. Most recently, in Fakhouri v. Taylor, 248 Ill.App.3d 328, 329-30, 187 Ill.Dec. 927, 618 N.E.2d 518 (1993), the plaintiff, as administrator for the decedent's estate, filed a wrongful death action against the defendant pharmacists, alleging the pharmacists should have warned either the decedent or the decedent's doctor that the prescribed dosage of medication exceeded the manufacturer's recommended dosage. The Fakhouri court reviewed with approval our prior decisions in Leesley v. West, 165 Ill.App.3d 135, 116 Ill.Dec. 136, 518 N.E.2d 758 (1988), and in Eldridge v. Eli Lilly & Co., 138 Ill.App.3d 124, 92 Ill.Dec. 740, 485 N.E.2d 551 (1985) which held that like prescription drug manufacturers, pharmacists did not have a duty to warn customers of a drug's potential adverse effects. Fakhouri, 248 Ill. App.3d at 333, 187 Ill.Dec. 927, 618 N.E.2d 518. In Leesley, the court found that because a prescription drug that has been prescribed by a doctor who has received manufacturer drug warnings is not an unreasonably dangerous product, the learned intermediary doctrine dictated that neither the manufacturer nor the pharmacist was required to provide consumer drug warnings. Leesley, 165 Ill. App.3d at 140-41, 116 Ill.Dec. 136, 518 N.E.2d 758. In Eldridge, the court ruled that the selection of a patient's medication required the individualized medical judgment that only the patient's physician possessed and that requiring pharmacists to warn consumers about the dangers of a prescription drug would improperly place the pharmacist in the middle of the doctor-patient relationship. Eldridge, 138 Ill. App.3d at 127, 92 Ill.Dec. 740, 485 N.E.2d 551.
The learned intermediary doctrine has been considered by this court in relation to medical device manufacturers. Hansen v. Baxter Healthcare Corp., 309 Ill.App.3d 869, 881, 243 Ill.Dec. 270, 723 N.E.2d 302 (1999), appeal allowed, 188 Ill.2d 564, 246 Ill.Dec. 122, 729 N.E.2d 495 (2000)[1], was a products liability action in which the plaintiff argued the defendant had failed to warn consumers its luer slip connectors used with intravenous tubing could come apart in use. The court explained that in medical device cases, the intended audience for product warnings was not the patients, but the prescribing physicians. Hansen, 309 Ill.App.3d at 881, 243 Ill.Dec. 270, 723 N.E.2d 302. Consequently, *1088 as with prescription drugs, medical device manufacturers have a duty to warn physicians of the device's dangerous propensities who then had a duty to convey any relevant warnings to their patients. Hansen, 309 Ill.App.3d at 881, 243 Ill.Dec. 270, 723 N.E.2d 302. However, since a medical device manufacturer had no duty to warn physicians of a device's dangers if the medical community was already generally aware of those dangers and trial testimony showed the medical community knew the luer slip connectors could separate, the defendant Baxter Healthcare had no duty to warn. Hansen, 309 Ill.App.3d at 881-82, 243 Ill.Dec. 270, 723 N.E.2d 302. See also Pluto v. Searle Laboratories, 294 Ill.App.3d 393, 396, 228 Ill.Dec. 860, 690 N.E.2d 619 (1997) (the learned intermediary doctrine, when applied, limits the prescription device manufacturer's duty to warn to physicians).
Defendants contended in their motion to dismiss that under the learned intermediary doctrine, they had no duty to warn Friedl of the hyperbaric chamber's dangerous propensities. According to defendants, because they merely delivered the prescription device Friedl's physician had ordered for her, their role was analogous to that of the pharmacist. The trial court's rationale for granting the motion to dismiss is not part of the record before us[2].
We deem defendants' reliance on the learned intermediary doctrine to be misplaced. Unlike the medical device cases in which the learned intermediary doctrine has previously been considered, suitability of the device as a treatment for a plaintiff's condition is not at issue here. See Hansen, 309 Ill.App.3d at 881-83, 243 Ill.Dec. 270, 723 N.E.2d 302; Pluto, 294 Ill.App.3d at 396, 228 Ill.Dec. 860, 690 N.E.2d 619. The rationale for the development and implementation of the learned intermediary doctrine is not implicated by the complaint. The complaint against the defendants does not suggest that the hyperbaric chamber was wrongly prescribed, taking into consideration the inherently dangerous propensities of the device in conjunction with Friedl's particular susceptibilities. Her complaint does not allege that defendants should have warned her not to use the hyperbaric chamber as prescribed by her physician. See Fakhouri, 248 Ill.App.3d at 330-31, 187 Ill. Dec. 927, 618 N.E.2d 518. Nor does it allege defendants failed to warn her of any risks associated with the correct use of the machine as prescribed. See Pluto, 294 Ill.App.3d at 396, 228 Ill.Dec. 860, 690 N.E.2d 619. Instead, Friedl alleged defendants failed to provide her with the basic instructions necessary for the machine's proper operation by failing to tell her the unit needed to be filled with water prior to use in order to humidify the oxygen used in the therapy and by failing to provide her with the necessary available video and written materials illustrating proper operation of the machine. The defendants have not cited, nor has our research discovered, any Illinois case that stands for the proposition that a medical device manufacturer or distributor that provides incomplete operating instructions, resulting in injuries unrelated to whether the device was properly prescribed, is nevertheless immunized from liability by the *1089 learned intermediary doctrine. We decline to make such a pronouncement. We hold that the learned intermediary doctrine does not apply to bar actions against distributors of prescribed medical devices for failing to properly instruct the consumer about the device's operation. Accordingly, the trial court erred in dismissing Friedl's action against defendants.
For the reasons set forth, the order of the trial court is reversed and the cause is remanded for further proceedings consistent with this order.
Reversed and remanded.
HARTMAN, P.J., and HOFFMAN, J., concur.
NOTES
[1] The petition for leave to appeal was allowed on April 5, 2000. The Illinois Supreme Court heard oral argument on March 20, 2001, and as of the date of this opinion, the matter remains on the court's advisement document.
[2] The record on appeal supplied by Friedl is incomplete. Although it was represented that the report of proceedings of the hearing on defendants' motion to dismiss was included in the record filed in this matter, the report of proceedings filed was related to a different case. However, because the matter before us is reviewed de novo, the report of proceedings providing the rationale for the trial court's dismissal is not essential to our disposition and we consider this appeal on its merits. See Kedzie & 103rd Currency Exchange, 156 Ill.2d at 115-16, 189 Ill.Dec. 31, 619 N.E.2d 732.