2020 IL App (1st) 190930-U

No. 1-19-0930

Second Division
October 13, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| PARKWAY BANK AND TRUST COMPANY, not personally but as T/U/T Agreement No. 7681 dated 4/1/1986, and on behalf of the beneficial owners, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Counter-plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 18 CH 05558 |
| GUS J. BAHRAMIS, MASIS SARKISIAN, and RIVER PLAZA CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, | ) ) ) ) ) | |
| Counter-defendants (Gus J. Bahramis, Masis Sarkisian, Counter-defendants-Appellees). [1] | ) ) ) | Honorable Eve M. Reilly Judge, presiding |

_____

JUSTICE COBBS delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**O R D E R**

_____

[1] The Notice of Appeal identifies the River Plaza Condominium Association as a party to the appeal. However, the parties' briefs do not list it as a party and no responsive brief has been filed by it. Therefore, we conclude that the River Plaza Condominium Association is not a party to the appeal and was mistakenly listed as such on the Notice of Appeal.

¶ 1     *Held*:  Affirmed. The circuit court's order granting counter-defendants' motions to dismiss is affirmed where the underlying causes of action were moot and no effectual relief in the form of damages could be granted.

¶ 2     This appeal arises from a dispute involving competing options to purchase a commercial condominium ("Unit 10") in the River Plaza Office Condominium, located at 1645 South River Road in Des Plaines, Illinois ("River Plaza Building"). Counter-plaintiff-appellant, Parkway Bank and Trust Company ("Parkway") owned Unit 10. Counter-defendants-appellees, Gus J. Bahramis and Masis Sarkisian (collectively, "counter-defendants") owned adjoining condominium units. After receiving a notice of sale for Unit 10, counter-defendants exercised their right of first refusal. Having exercised their rights at the same time, a dispute as to who possessed a superior right to acquire Unit 10 arose. Bahramis filed suit seeking declaratory and injunctive relief in connection with his option to purchase Unit 10. Sarkisian moved to dismiss the complaint.

¶ 3     Parkway filed a three-count counterclaim against counter-defendants. Count I of the counterclaim sought injunctive relief requiring Sarkisian to deposit $10,000 in earnest money in order to exercise his option to purchase Unit 10. Count II sought, *inter alia*, injunctive relief requiring counter-defendants to pay Unit 10's purchase price and a declaration that the party found to have the right to purchase Unit 10 would be liable for all damages resulting from the dispute or litigation. Alternatively, Count III sought a declaration that the right of first refusal is unenforceable as an unreasonable restraint on alienation. Counter-defendants moved to dismiss Parkway's counterclaim pursuant to section 2-619.1 of the Illinois Code of Civil Procedure ("Code") (735 ILCS 5/2-615, 2-619 (West 2018)). On January 15, 2019, Parkway filed an amended counterclaim that included an additional count seeking a declaratory judgment against River Plaza Condominium Association. With respect to counts I, II, and III,

which sought injunctive and declaratory relief, Parkway acknowledged that they were rendered moot by the subsequent purchase of Unit 10 by Bahramis. However, Parkway contended that the claims pertaining to damages in Count II remained.

¶ 4    On March 14, 2019, the circuit court entered an order dismissing Count II of Parkway's amended counterclaim with prejudice on the basis that the "causes of action are rendered moot." On appeal, Parkway essentially argues that the circuit court erred in granting counter-defendants' motions to dismiss because its claims for damages were not moot. For the reasons that follow, we affirm.

¶ 5                                              I. BACKGROUND

¶ 6    The River Plaza Condominium Association ("Association") is an Illinois not-for-profit corporation that manages and operates the River Plaza Building, which includes 23 commercial units. Parkway, as Trustee under a Land Trust Agreement, known as trust number 7861, was the owner of Unit 10. Bahramis owned "two adjoining" units to Unit 10 (Units 14 and 24), each measuring 987 square feet. Sarkisian owned a "contiguous" unit to Unit 10 (Unit 9), measuring 1200 square feet.

¶ 7    The Association is governed by a Declaration of Condominium Ownership and of Easements, Restrictions and Covenants ("Declaration"). Article XVI, Section 1 of the Declaration governs the sale of a unit and provides, in relevant part, as follows:

"Any Unit Owner other than the Trustee who wishes to sell his Unit Ownership shall give to the Board not less than thirty (30) days prior written notice of his intent to sell and subsequently, the terms of any contract to sell, entered into subject to other Unit Owners['] options as related below, and the Board's option as set forth hereinafter, together with a copy of such contract, the name, address and financial and character

references of the proposed purchaser and such other information concerning the proposed purchaser as the Board may reasonably require. The Unit Owner contiguous to the Unit to be sold shall at all times have the first right and option for a ten-day period to purchase such Unit Ownership, and if there are two Unit Owners contiguous to the Unit to be sold, the Unit Owner whose Unit has less square feet area shall have the first right and option to purchase for a ten-day period, and the larger Unit Owner shall have the Second right and option to purchase for a ten-day period."

¶ 8        On or about March 27, 2018, Parkway entered into a contract to sell Unit 10 to Sachi Construction, Inc. ("Sachi") for $85,500. The anticipated closing date of the contract was April 11, 2018. On March 29 and March 30, 2018, Parkway's attorney emailed notices of the sale to the Association. In April 2018, counter-defendants, as owners of the adjoining and contiguous units, exercised their option to purchase Unit 10. Bahramis, in particular, exercised his purchase option by giving notice, providing a deposit of $10,000 earnest money, and showing proof of sufficient funds to close. Having both exercised their option to purchase, counter-defendants disagreed as to who possessed the superior right of first refusal concerning Unit 10. On April 24, 2018, Parkway canceled its contract with Sachi.

¶ 9                                A. Bahramis's Complaint

¶ 10        On April 30, 2018, Bahramis filed a "Verified Complaint in Equity" seeking a declaration that he had the "sole and superior right" to purchase Unit 10. Bahramis asserted that the plain meaning of Article XVI, Section 1 of the Declaration grants the first right of refusal to the owner of the smallest contiguous unit. Bahramis also noted that if there were multiple contiguous units of the same size, the Declaration provides that the smallest unit number would receive the first right of refusal. Accordingly, Bahramis claimed that the order for rights of

refusal would be: (1) Unit 14 with approximately 987 square feet; (2) Unit 24 with approximately 987 square feet; and (3) Unit 9 with approximately 1200 square feet. Being the owner of both Units 14 and 24 and having timely filed his notice to exercise option on April 19, 2018, Bahramis asserted that he possessed "a clear right or interest in having a right of first refusal to purchase Unit 10."

¶ 11     Bahramis also sought a "temporary restraining order, a preliminary injunction, and a permanent injunction" to enjoin Parkway, Sarkisian,[2] the Association, and Sachi "from exercising any right *** inconsistent with the Declaration and Bylaws of the Association."

¶ 12                              B. Motion to Dismiss Complaint

¶ 13     On September 9, 2018, Sarkisian filed a motion to dismiss with prejudice Bahramis's complaint pursuant to section 2-619(a)(9) of the Code (735 ILCS 2-619(a)(9) (West 2018)). In his motion, Sarkisian argued that the complaint falsely alleged that Parkway gave notice of its intent to sell on March 30, 2018 and that Bahramis had 20 days thereafter to exercise his option. Sarkisian contended however, that notice was provided on March 29, 2018, and that Bahramis had only 10 days to exercise his right to purchase. Sarkisian also noted that, even if Bahramis had 20 days to exercise his option, he was still one day late based on a notice date of March 29, 2018. According to Sarkisian, this late notice was fatal to Bahramis's claims and dismissal of the complaint was warranted.

¶ 14                              C. Parkway's Counterclaim

¶ 15     On September 18, 2018 Parkway filed a three-count counterclaim. Count I alleged that "[b]ecause Declaration Article XVI, Section 1 provides that the right of first refusal is

_____

[2] Bahramis also named Maria Sarkisian as a defendant in the proceeding. However, the record reveals that she was later dismissed as a defendant because she was not the record owner of Unit 9.

exercisable 'upon the same terms as the contract for sale,' " Sarkisian should be required to "immediately tender a signed contract in the form and on the same terms as the Sachi contract, a $10,000 earnest money deposit, and proof of sufficient funds to close."

¶ 16    Count II of the counterclaim sought injunctive relief requiring counter-defendants to each deposit the balance of the $85,500 Sachi contract price to ensure that they can close on the unit. Count II also sought a declaration that if either Bahramis or Sarkisian "is adjudged entitled to purchase Unit 10, a condition of such purchase shall be appropriate compensation" to Parkway and Unit 10's "beneficial owners" for "all damages they suffered as a result of the dispute/litigation." Additionally, in the event that neither Bahramis nor Sarkisian purchased Unit 10, Count II sought a declaration that Unit 10 and the beneficial owners would be exempt from "further obligation to comply with the Declaration right of first refusal in Article XVI, Section 1, to ensure that they are not subjected to ongoing, open-ended, and potentially repetitive damage and delay in the sale of Unit 10 going forward."

¶ 17    Pled in the alternative, Count III sought a declaration that the Declaration's right of first refusal is unenforceable as an unreasonable restraint on alienation.

¶ 18    The counterclaim also alleged that the sale of Unit 10 pursuant to the March 27, 2018 contract with Sachi was originally scheduled to close 14 days thereafter, on April 11, 2018, and Article XVI, Section 1 provides that the right of first refusal is exercisable during a 30 day period following receipt of notice and "upon the same terms as the contract for sale." As such, Parkway asserted that the closing of any right of first refusal sale should have been required to take place no later than 14 days after expiration of the 30 day period following the March 29 and 30th notices, or by no later than May 13, 2018. The counterclaim alleges that as result of the delay or dispute, Parkway and the "Unit 10 beneficial owners" suffered and continue to

suffer damages in connection with Unit 10 for which they are entitled to compensation, including, *inter alia*, (1) loss of sale on the Sachi contract; (2) ongoing liability for Association assessment, real estate tax, and utilities liability beyond May 13, 2018; (3) bank and trustee fees in connection with the litigation; and (4) attorney's fees. The counterclaim alleges that "[s]ince [May 13, 2018, Parkway] and/or the Unit 10 beneficial owners have incurred at least $5260.70 in fees and expenses related to the Dispute as of [September 17, 2018], which fees and expenses continue to accrue."

¶ 19                                D. October 16, 2018 Order

¶ 20        Counter-defendants entered into a settlement agreement whereby Sarkisian renounced his claim on the right of first refusal and allowed Bahramis to purchase Unit 10 from Parkway. On October 16, 2018, the circuit court entered an order reflecting this agreement. The order provided that "[b]y agreement" between Bahramis and Sarkisian, "Bahramis [had] the right to exercise his right of first refusal, and close on the purchase of Unit 10 *** within 14 days, by [October 20, 2018]." Bahramis complied with the court's order and closed on the purchase of Unit 10.

¶ 21        On October 26, 2018, Parkway filed a Motion for Default Judgment for damages sought in Count II of its counterclaim. On November 9, 2018, the circuit court denied the motion as to Sarkisian and granted him leave to file a motion to dismiss *instanter*. However, the motion for default was "entered and continued as to Bahramis," and he was granted 21 days to "answer or otherwise plead to [Parkway's counterclaim] Count II."

¶ 22                          E. Motions to Dismiss Counterclaim

¶ 23                        1. Sarkisian's Motion to Dismiss Counterclaim

¶ 24    On November 9, 2018, the same day that the court ruled on Parkway's Motion for Default Judgment, Sarkisian moved to dismiss Parkway's counterclaim pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). Sarkisian argued that Parkway's claims for equitable relief became moot when Bahramis "closed and purchased" Unit 10. As to Parkway's claims for money damages, Sarkisian argued that the counterclaim failed to state a cause of action and therefore, those claims should be dismissed under section 2-615. Specifically, Sarkisian contended that the counterclaim failed to allege any basis for monetary relief against Sarkisian and "any monetary claims under a tort theory of recovery would be barred under the Moorman Doctrine."

¶ 25                    2. Bahramis's Motion to Dismiss Counterclaim

¶ 26    On November 30, 2018, Bahramis also moved to dismiss Parkway's counterclaim pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)). Like Sarkisian, Bahramis argued that Parkway's counterclaims should be dismissed with prejudice because all of Parkway's equitable claims became moot once Bahramis purchased Unit 10.

¶ 27    Bahramis further contended that Parkway failed to state any recognizable cause of action for money damages, as its counterclaim merely recited the events that transpired between the parties since March of 2018. Lastly, Bahramis argued that what Parkway claimed as damages from assessments, utility bills, and property taxes were general expenses associated with owning a condominium property. No facts were alleged that any of the parties deprived or interfered with Parkway's ownership or possessory interest in Unit 10. According to Bahramis, the claim was barred under the economic loss doctrine as discussed in *Moorman Mfg Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982).

¶ 28                    F. Parkway's Amended Counterclaim & Sur-Reply

¶ 29        On January 15, 2019, the circuit court entered an order granting Parkway leave to file an amended counterclaim and a sur-reply to the counter-defendants' motions to dismiss the counterclaim. The order further provided that counter-defendants "may file a Sur-Surreply." That same day, Parkway filed an Amended Verified Counterclaim ("amended counterclaim"). A footnote in the amended counterclaim explains that the "headings of each of Counts I-III below, the Injunctive and Declaratory Relief originally sought against [Bahramis, Sarkisian] and the Association was mooted by the *** closing of the Bahramis' purchase of Unit 10." As such, "[a]ll that remains are the Count II damage claims against Bahramis and Sarkisian (which are not hereby amended in any respect)." Additionally, the amended counterclaim included a "newly pled Count IV below for Declaratory Judgment against the Association." Count IV stated that "in connection with settlement discussions on [Parkway's] damages claims, the attorney for [Bahramis] *** asserted that the Association has a claim against [Parkway] and/or the Unit 10 beneficial owners arising out of an alleged 'Agreement' dated [June 12, 2013]." Thus, an "actual, ripe controversy has *** arisen between Unit 10 Trustee and the Association, in connection with which Unit 10 Trustee hereby asks the Court to make a binding declaration of the parties' rights and obligations, if any, under the alleged 'Agreement.' "

¶ 30        On January 22, 2019, Parkway filed a sur-reply in opposition to counter-defendants' motion to dismiss Count II of its counterclaim. In its sur-reply, Parkway asserted that although its claims for injunctive and declaratory relief were rendered moot, it was still entitled to damages. Parkway argued that courts retain jurisdiction to award equitable damages even where the underlying equitable claims have been dismissed and could award these damages to any party, even absent a formal claim. Finally, Parkway claimed that it pleaded sufficient facts that would entitle it to relief. In response, Bahramis filed a sur-surreply reiterating that

Parkway's underlying claims were rendered moot and its claim for damages should be dismissed because a "claim for damages without any associated cause of action allowing money damages is baseless."[3]

¶ 31                    G. March 14, 2019 Order & Voluntary Dismissal

¶ 32        Counter-defendants' "motions to dismiss [Parkway's] damages claim" were set for hearing on March 14, 2019.[4] After the hearing, the circuit court entered an order granting the motions as to Count II of Parkway's amended counterclaim "with prejudice under 2-619 as the causes of action are rendered moot." The order further specified that the parties other than the Association stipulated that all other claims between them (under the "original Complaint and Amended Counterclaim Counts I and III") were moot.

¶ 33        On March 26, 2019, Parkway moved for voluntary dismissal of all of its remaining claims without prejudice pursuant to section 2-1009(a) of the Code (735 ILCS 5/2-1009 (West 2018)). In support of its motion for voluntary dismissal, Parkway simply stated that the "[t]rial or hearing of this matter has not begun" and "[n]otice hereof is being given to all [counter-defendants]." On April 2, 2019, the circuit court granted dismissal of Parkway's remaining claims.

¶ 34                              II. ANALYSIS

¶ 35        On appeal, Parkway challenges the circuit court's March 14, 2019 order granting counter-defendants' motions to dismiss its amended counterclaim. Because Sarkisian did not file a brief, we take the instant appeal on the submitted briefs of Parkway and Bahramis and the

---

[3] The circuit court's February 7, 2019 order reveals that on oral motion, Sarkisian was granted leave to join in Bahramis's "Sur-surreply" and thereby "adopt[ed] it as his sur-surreply."

[4] The circuit court's February 7, 2019 order stated that the March 14, 2019 hearing was scheduled as to the "fully briefed motions to dismiss [Parkway's] damage claims."

record alone. See *First Capital Mortgage v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1973).

¶ 36    Parkway argues that the circuit court's decision should be reversed and remanded for further proceedings because: (1) counter-defendants fail to cite any authority in support of their mootness arguments; (2) courts retain jurisdiction to award equitable damages even after dismissing underlying equitable claims; (3) courts may award equitable damages to any party, even absent a formal claim; (4) "[e]specially in Equity, Courts looks to the substance of the claim, not its label"; (5) Parkway has pled facts entitling it to damages relief; (6) Parkway's damages also included attorney's fees and costs it incurred as a result of the litigation and dispute; and (7) Parkway's claims are not subject to dismissal pursuant to section 2-615 of the Code.

¶ 37    Although Parkway identifies these arguments as distinct, we note that several of them are interrelated. It appears to us that Parkway is essentially advancing three main arguments: (1) Parkway's amended counterclaim was not moot as to damages; (2) the circuit court retained jurisdiction to award damages even where the underlying equitable claims were dismissed; and (3) Parkway has pled sufficient facts to avoid a section 2-615 dismissal and, thus, Parkway is entitled to other damages such as attorney's fees and costs.

¶ 38                                  A. Standard of Review

¶ 39    Before we address the merits of this appeal, we note that counter-defendants filed a combined motion to dismiss under section 2-619.1 which permits a party to combine a section 2-615 motion to dismiss (735 ILCS 5/2-615 (West 2018)) with a section 2-619 motion to dismiss (735 ILCS 5/2-619 (West 2018)). However, the circuit court's dismissal was based only on section 2-619. A motion to dismiss under section 2-619 admits the legal sufficiency of

the complaint but asserts an affirmative matter that acts to defeat the plaintiff's claim. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When ruling on a motion to dismiss under section 2-619, it is proper for a court to accept all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts in favor of the nonmoving party. *Edelman, Combs and Latturner v. Hinshaw and Culbertson,* 338 Ill. App. 3d 156, 164 (2003). Our review of a trial court's decision to grant a motion to dismiss under section 2-619 is *de novo. Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 10. On review, "this court may affirm the trial court's judgment on any basis that is supported by the record." *Stoll v. United Way of Champaign County*, *Illinois, Inc.*, 378 Ill. App. 3d 1048, 1051 (2008).

¶ 40        Although the record on appeal does not include a report of proceedings or an acceptable substitute for the hearing on the motions to dismiss, we may still review the circuit court's decision on its merits. See *Friedl v. Airsource, Inc.*, 323 Ill. App. 3d 1039, 1042 (2001) (because review of a motion to dismiss is *de novo*, "the report of proceedings providing the rationale for the trial court's dismissal is not essential to our disposition").

¶ 41                                    B. Mootness

¶ 42        Motions to dismiss under section 2-619 are proper based on mootness. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 24. "A case on appeal is rendered moot where the issues that were presented in the trial court do not exist any longer because intervening events have rendered it impossible for the reviewing court to grant the complaining party effectual relief." *In re India B.*, 202 Ill. 2d 522, 542 (2002). Actions will be dismissed as moot once plaintiffs have received what was sought. *Turner v. Joliet Police Department*, 2019 IL App (3d) 170819, ¶ 12. Given that Parkway does not dispute that Counts I and III of its

counterclaim are moot, we limit our analysis to whether Count II of Parkway's counterclaim is moot in light of Bahramis's closing on Unit 10.

¶ 43    Parkway argues that although counter-defendants included "mootness sections" in their motions to dismiss, they generally "directed" their mootness arguments to the equitable claims and not the damages claims that were also incorporated in Count II of its counterclaim. Parkway contends that neither counter-defendant "cited any authority supporting such a defense to [Parkway's] *** Count II damage claims." We note initially that Count II of Parkway's amended counterclaim appears to be identical to the previous one, except that it includes a heading explaining that the injunctive and declaratory relief it originally sought was rendered moot by the purchase of Unit 10.

¶ 44    We agree that the equitable claims were rendered moot by the purchase of Unit 10. For instance, Count II sought injunctive relief in the form of an order requiring counter-defendants to each deposit the balance of the $85,500 Sachi contract price "as a condition of their continued participation in the litigation." This relief was rendered moot by Bahramis's purchase of Unit 10. Thus, the court could not require the counter-defendants to make a deposit because Bahramis had already closed on the Unit by paying the required amount, thereby ending the ongoing dispute. Alternatively, Count II provides that if neither Bahramis nor Sarkisian end up purchasing Unit 10, the court should declare that Parkway is exempt from "further obligation to comply with the Declaration right of first refusal in Article XVI, Section 1." This relief was also rendered moot in light of Bahramis's purchase.

¶ 45    We thus turn to Count II's request for a declaration that if either Bahramis or Sarkisian "is adjudged entitled to purchase Unit 10, a condition of such purchase shall be appropriate compensation" to Parkway and Unit 10's "beneficial owners" for "all damages they suffered

as a result of the dispute/litigation." These damages seemingly allude to the damages previously alleged in paragraph 9 of the amended counterclaim as arising from (1) loss of sale on the Sachi contract, (2) cost of assessments, property taxes, and utility incurred during the additional months Parkway owned Unit 10, (3) bank and trustee fees; and (4) attorney's fees. However, by the time the circuit court ruled on Parkway's counterclaim, Bahramis had already purchased Unit 10. The fact that Bahramis had already purchased Unit 10 prior to the court's decision, makes it impossible for the court to now grant Parkway this relief. The court can no longer condition the purchase of Unit 10 on other "appropriate compensation" or damages. Therefore, Count II of Parkway's counterclaim was moot as to the equitable claims and related damages.

¶ 46                                    C. Damages

¶ 47        Even if we agreed with Parkway that its claims for damages were not moot because they were a separate prayer of relief from its equitable claims, Parkway would still not prevail. Parkway's sole claim for damages independent, but not truly separate, of its equitable claims in Count II, appears in paragraphs 16-18. Paragraph 16 of Count II alleges that "[a]s the Declaration *** provides that the right of first refusal is exercisable during a thirty (30) day period following receipt of notice, it contemplates that any such exercise will delay the closing of a sale of [Unit 10]" and thus, "this provision does not envision, and should not be allowed to cause ongoing, open-ended damage to the seller of a unit *** by indefinitely delaying a sale due to a dispute between competing adjoining unit owners." Paragraph 17 of Count II, on the other hand, suggests that there may be some sort of bad faith involved in pursuing this litigation as counter-defendants have a history of "enmity and litigation" as evidenced by a similar dispute before this court involving the counter-defendants as to who had a superior right to

- 14 -

another unit (see *Sarkisian v. Bahramis*, 2017 IL App (1st) 161483-U). Paragraph 18 explains that it would be "inequitable to allow [Parkway] and/or Unit 10 beneficial owners to be subjected to ongoing, open-ended, and potentially repetitive damage and delay in the sale *** without a mechanism for ensuring appropriate protection for and compensation to them."

¶ 48        Not only do the cited paragraphs alone fail to clearly state the specific damages sought, we find Parkway's arguments pertaining to its entitlement to damages in Count II unpersuasive. First, paragraph 16 finds fault in the underlying Declaration. We fail to see how counter-defendants can be personally at fault for simply complying with the unit sale procedure outlined in the Declaration. Further, we do not see how damages, if any, against counter-defendants would remedy any alleged harm caused by the Declaration. Next, paragraph 17 implies that there is some bad faith between the parties; however, our review of the pleadings show that Bahramis's claim of superior rights was based on his interpretation of the Declaration's plain language and its application to the facts and Sarkisian's claim of superior right to purchase was based on Bahramis's purported untimely notice exercising his rights. These appear to be valid claims and distinct from the dispute in *Sarkisian v. Bahramis*, 2017 IL App (1st) 161483-U, which involved interpretation of the Declaration's language. To hold otherwise would mean that a party could recover damages merely because litigation, necessary for the determination of a party's rights, was previously sought.

¶ 49        Furthermore, there is no suggestion in the record that the governing Declarations are of recent vintage. We presume that the Declarations were in place and made available for review at the time Parkway acquired Unit #10 or, if not then, that it had some opportunity to review and vote favorably, or not, on any amendments which included the right of first refusal provision. Our only point is that to the extent the Declarations impose undesirable restrictions

and limitations on members to whom they apply, the recourse is the members' right to seek amendments.

¶ 50    We further find Parkway's argument that it is entitled to the damages as generally stated in paragraphs 9 and 10 of its amended counterclaim to lack merit. Paragraph 9 of the amended counterclaim states that Parkway has suffered damages as a result of the loss of Sachi contract, cost of assessments, property taxes, and utility costs incurred during the additional months it owned Unit 10 because of the dispute between the counter-defendants. Additionally, Parkway claims that it is entitled to attorney fees arising from the litigation between the counter-defendants. Citing *Gordon v. Bauer*, 177 Ill. App. 3d 1073, 1081 (1988), Parkway argues that even though the court ruled that it was not entitled to injunctive and declaratory relief, the court could have awarded damages.

¶ 51    In *Gordon*, the plaintiffs initially sought both specific performance of a contract to purchase farmland and damages for breach of contract as incidental relief to the specific performance remedy. 177 Ill. App. 3d at 1078. Nine days later after the bench trial had begun, the plaintiffs voluntarily dismissed the part of their complaint that sought specific performance in light of the substantial depreciation of the farmland's market value. *Id.* at 1079. Thus, the plaintiffs elected to proceed only on their claims for damages. *Id.* The court awarded plaintiffs damages in the amount of $19,972.23. *Id.* at 1078.

¶ 52    On appeal, the Fifth District recognized the general principle that although a court in equity may award damages to afford complete relief, the court's jurisdiction to hear the damages claims will fail if the claim for equitable relief fails. *Id.* at 1082. However, the Fifth District reasoned that the trial court retained jurisdiction in that case because the court never ruled that the plaintiffs were not entitled to specific performance. *Id*. The Fifth District therefore affirmed

the damages award since "[t]he suit was properly brought in equity, and it was only the change of conditions after the filing of the suit which made *** specific performance inappropriate." *Id.*at 1084. Thus, the crux of the *Gordon* decision was that, because the plaintiffs voluntarily withdrew their request for the equitable relief of specific performance, the trial court never ruled that they were not entitled to it. As such, the plaintiffs could be awarded damages.

¶ 53 Parkway analogizes the procedural posture in *Gordon* to the present case, where some of its equitable claims were rendered moot by virtue of counter-defendants' settlement. Though we are mindful that the circuit court did not rule on the merits of those equitable claims, we find that, unlike *Gordon*, the court here did explicitly find that Parkway was not entitled to equitable relief. See *Gordon*, 177 Ill. App. 3d at 1082 ("[T]he court's jurisdiction to hear the damage claims will fail if the claim for equitable fails."); see also *Butler v. Kent*, 275 Ill. App. 3d 217, 228-229 (1995). Unlike Gordon where the cause of action was voluntarily dismissed based on the parties' conclusion that specific performance was no longer a beneficial remedy, the parties here conceded that the equitable claims were moot and the court dismissed Count II of Parkway's amended counterclaim on the basis that the causes of actions were moot. As such, no effectual relief could be granted.

¶ 54 Additionally, as we previously noted, the delay appears to stem from the Declaration's 30-day period and its provisions providing that counter-defendants can exercise their right of first refusal. As such, we fail to see how damages, if any, against counter-defendants would remedy the harm caused by the Declaration. As for the costs of attorney's fees, it is well established that the parties generally bear their own costs of litigation. *Morris B. Chapman and Associates, Ltd. v. Kitzman*, 197 Ill. 2d 560, 572 (2000). Only where a party's tortious conduct causes the second party to incur costs outside the original action may the second party recover such costs.

See *Goldstein v. DABS Asset Manager, Inc.*, 381 Ill. App. 3d 298, 303 (2008). Again, we do not see how simple compliance with the Declaration or pursuing litigation to exercise their right of first refusal constitutes tortious conduct. Therefore, we find that a section 2-619 dismissal was proper.

¶ 55                                III. CONCLUSION

¶ 56    For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 57    Affirmed.